**SMITH CORONA CORPORATION,**
Plaintiff,

v.

**The UNITED STATES, Defendant,**

and,

Canon Inc., Canon U.S.A. Inc., Canon Business Machines, Inc., Brother Industries, Ltd., Brother International Corp., Brother Industries (USA), Inc., Matsushita Electric Industrial Co., Ltd., Kyushu Matsushita Electric Co., Ltd., Matsushita Electronic Components Co., Ltd., Panasonic Company, Panasonic Communication and Systems Company, and Panasonic Industrial Company, Unincorporated Divisions of Matsushita Electric Corporation of America, Defendant–Intervenors.

**Court No. 91–09–00717.**

United States Court of
International Trade.

Sept. 23, 1992.

best information available."

Stewart & Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and Robert A. Weaver, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (Marc E. Montalbine), Jeffery C. Lowe, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., of counsel, for defendant.

Covington & Burling, Harvey M. Applebaum, Sonya D. Winner, David R. Grace and Thomas O. Barnett, Washington, D.C., for defendant-intervenor Canon Inc.

Tanaka Ritger & Middleton, H. William Tanaka and Patrick F. O'Leary, Washington, D.C., for defendant-intervenor Brother Industries.

Weil, Gotshal & Manges, Jeffrey P. Bialos, Angela J. Paolini Ellard and Martin S. Applebaum, Washington, D.C., for defendant-intervenor Matsushita.

## OPINION

RESTANI, Judge:

This matter was remanded for the sole purpose of determining whether any adjustments were warranted to the rate of 150.60% which ITA previously had found was a viable rate to use as best information available ("BIA") for respondents Brother Industries, Ltd. and Kyushu Matsushita. The court determined Commerce's other reasons for rejecting the rate were legally infirm. *See Smith Corona Corp. v. United States*, 16 CIT ——, 796 F.Supp. 1532 (1992). The 150.60% rate was based on Smith Corona's petition information, as adjusted by difference in merchandise data in the public version of Brother's proprietary submission to Commerce. The proprietary version was withdrawn from the record by Brother.

Brother's first objection to the 150.60% rate is that once the proprietary information is withdrawn, the public version may not be used. Commerce's view is that, unlike propriety data, public data submitted by respondents is not subject to a respondent's control. Regulations governing return of proprietary data rejected by Commerce, or data as to which Commerce will not grant a proprietary designation, do not apply. *See* 19 C.F.R. § 353.32(d) and (g) (1992). Commerce's interpretation of its own regulations to permit continued use of the public version of withdrawn proprietary data is reasonable.

Second, Brother states use of a difference in merchandise adjustment based on a United Kingdom model instead of a Japanese model, which was the basis of petitioner's underlying information, is an unacceptable mixing of apples and oranges. Brother is correct that this is not the optimal methodology, but as Commerce indicates, its choices were extremely limited due to withdrawal of the proprietary data.

The data used was literally the best information available under the circumstances.

Third, Brother states that the Japanese home market was not viable, that is, the home market sales were less than 5% of the third country sales. The court was well aware at the time it issued the first opinion herein of the contention that the data in Smith Corona's petition based on the Japanese home market might not satisfy the 5% test. *See* 16 CIT at ——, 796 F.Supp. at 1536; 19 C.F.R. § 353.48(a) (1992) ("normally" the 5% figure will control). Commerce is correct that, given the withdrawal of the proprietary data, the exact state of the home market is not verifiable. Furthermore, it would not be appropriate to allow Brother to obtain a more favorable margin based on unverifiable data under the unique circumstances of this case. While "normally" the 5% figure would control, it is not unreasonable for Commerce to accept data based on a home market that represented 4% of third country sales.[1]

Accordingly, the court finds no error in Commerce's remand determination.

---

[1] This figure is derived from Smith Corona's data. For certain products, the home market may have reached the 5% mark.